UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEREK S. and ASHLEY T.S., D.O., Individually and as Guardians *Ad Litem* of their minor child, J.S.,<br><br>　　　　　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　　　　-against-<br><br><br>THE BALLSTON SPA CENTRAL SCHOOL DISTRICT, and BALLSTON SPA BOARD OF EDUCATION.<br><br>　　　　　　　　　　　　　　　　　　Defendants. | 1:24-cv-767 (AMN/CFH)<br><br>**COMPLAINT**<br><br>Index No.:<br><br>JURY TRIAL DEMANDED |

　　　　This action is brought by Plaintiffs Derek S. and Ashley T.S., D.O., individually and on behalf of their minor son, J.S. ("Plaintiffs"), by their counsel, Cooper Erving & Savage LLP, who allege as follows:

## PRELIMINARY STATEMENT

　　　　1.　　　This action is a civil rights action brought pursuant to Title II of the Americans with Disabilities Amendments Act of 2008 ("ADA") (42 U.S.C. § 12131 et seq.), Title V of the ADA (42 U.S.C. § 12203(a)), and Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. §794(a), ("Section 504").

　　　　2.　　　Title II of the ADA prohibits a student with disability from being excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or being subjected to discrimination by such entity, by reason of the student's disability. (42 U.S.C. § 12131 et seq.).

　　　　3.　　　Section 504 prohibits exclusion from participation in, denial of the benefits of, or discrimination against people with disabilities, in any program or activity receiving Federal financial assistance. The claims set forth herein are brought pursuant to Section 504 and its

1

implementing regulations, 34 C.F.R. §§104.4 and 104.33, each of which authoritatively construes Section 504.

4. Section 504 applies to "programs or activities" operated by any department, agencies, or other instrumentalities of a State or local government and local educational agencies, such as public-school districts that receive Federal financial assistance.  29 U.S.C.§794(b)(2)(B).

5. The ADA and Section 504 provide a cause of action for money damages and other relief against a public school that discriminates against a person with a disability, and/or fails to provide or otherwise prohibits reasonable accommodation and/or meaningful access to such programs or activities because of a student's disability.

6. Defendants Ballston Spa Central School District and Ballston Spa Board of Education, through one or more of their officials, administrators, agents and/or employees, have discriminated against and acted with gross negligence and/or deliberate indifference to Plaintiffs, and failed to provide minor J.S. with reasonable accommodation and/or meaningful access to public education by reason of his disability, as set out more fully below.

## JURISDICTIONAL STATEMENT

7. The jurisdiction of this Court is invoked pursuant to 26 U.S.C. §§ 1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States, including the Americans with Disability Act and the Rehabilitation Act of 1973.

8. Venue is proper under 28 U.S.C. §1391(b) because defendants are state actors and/or reside in the State of New York within the geographical coverage of the United States District Court for the Northern District of New York, and the acts and/or omissions giving rise to the claims herein alleged took place within this District.

9. Declaratory relief is authorized pursuant to 28 U.S.C. §§2201-02.

10. Plaintiffs are not required to exhaust any administrative remedies before filing the instant suit. *Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859 (2023); *Volpe v. New York City Dep't of Educ.*, 195 F. Supp. 3d 582 (S.D.N.Y. 2016).

## PARTIES

11. Plaintiff Derek S. and Ashley T.S., D.O. are residents of the Town of Malta and County of Saratoga Springs in the State of New York. They are the natural parents of their minor son, J.S., who, as of the date of this Complaint, is eight years old. J.S., at all relevant times, has been diagnosed with autism spectrum disorders ("ASD"), and certified for special education in the State of New York, and entitled to a meaningful access to education and reasonable accommodations under Federal and State law, including the ADA and Section 504.

12. Defendant Ballston Spa Central School District (the "School District"), is a municipality organized and existing pursuant to the New York Education Law, a public-school recipient of federal financial assistance, and a public elementary and secondary education system.

13. Defendant Ballston Spa Board of Education (the "Board") is the governing body of the School District pursuant to the laws of the State of New York. Upon information and belief, the Board receives federal financial assistance.

14. Under the ADA and the Rehabilitation Act, *respondeat* superior liability applies to Plaintiffs' claims, therefore, Defendants are liable for the vicarious acts of their employees.

15. At all relevant times, Defendants were legally responsible for assuring that minor J.S. was not subjected to discrimination, maltreatment, or abuse; and that he received reasonable accommodations for his educational disabilities, and that he had meaningful access to public education.

## FACTS

### Background

16. At all relevant times, Defendants accepted annually federal financial assistance for use in providing special education services and programs, and related aids and services to students with disabilities.

17. In agreeing to accept annual federal financial assistance (including without limitation during the years 2019 through the present) for use in providing education, including special education programs and services and mental health services to students enrolled in their educational programs or activities, Defendants agreed to provide every eligible special education student in their programs or activities, including J.S., with meaningful access and reasonable accommodation to children with autism spectrum disorders.

18. In agreeing to accept federal financial assistance (including without limitation during the years 2019 through the present) for use in providing special education and services to students in their educational programs or activities, Defendants agreed to provide eligible special education students, including J.S., with reasonable accommodations for their educational disabilities and meaningful access to education, and to assure that each such student was not subjected to discrimination.

19. New York Law requires educational programs for student with autism to, among other things, (1) provide services to meet the individual language needs of a student with autism, (2) a special education teacher with a background in teaching students with autism to ensure the student's special education needs are being met, and (3) parent counseling and training for the purpose of enabling parents to perform appropriate follow-up intervention activities at home. 8 N.Y.C.R.R. §200.13.

20. At all relevant times, Defendants knew that J.S. was a student diagnosed with autism spectrum disorder ("ASD").

21. ASD is a neurodevelopmental disorder which affects social communication and interaction and is often characterized by repetitive patterns of behaviors that impact the child's social communication, learning, and adaptive development and functioning.

22. At all relevant times, Defendants knew or should have known that behavioral and mental health issues attendant to ASD require that comparable services be available for use with children with autism spectrum disorders.

23. At all relevant times, Defendants knew that autism specific programs were available for use with children with autism spectrum disorders including, but not limited to, Applied Behavior Analysis ("ABA") Therapy Services, which was the most effective treatment recommended for children such as J.S.

24. At all relevant times, Defendants knew or should have known that Applied Behavior Analysis ("ABA") is the most well-researched and validated approach to treatment of autism spectrum disorder ("ASD"). As a result, the United States Center for Disease Control, the American Psychological Association (Society of Child and Adolescent Clinical Psychology), American Academy of Child and Adolescent Psychiatry, and the New York State Department of Health recommend that ABA principles be included as an important element of any intervention program for young children with autism.

25. Defendants knew or should have known that scientific evidence confirms the effectiveness of ABA interventions in the development and improvement of the cognitive function, language skills, intelligence quotient (IQ), and social abilities in young children with autism when such ABA interventions are delivered early, in an intensive and comprehensive manner.

26. The New York Department of Health Clinical Practice Guideline on Assessment and Intervention Services for Young Children with Autism Spectrum Disorder – 2017 Update recommended that early behavioral and developmental intervention based on principles of ABA be incorporated as an important element of any intervention approach for young children with autism spectrum disorder. (https://www.health.ny.gov/publications/20152.pdf)

**Discrimination**

27. In or about June 2018, J.S. was diagnosed with autism spectrum disorder. At the time of his diagnosis, J.S. was exhibiting stereotypic behaviors, including challenges in social interaction, communication, and play, consistent with his diagnosis of ASD.

28. As a result, J.S.'s neurodevelopmental pediatrician recommended that early individualized behavioral and developmental interventions based on principles of ABA be provided to J.S. at a minimum of approximately 20 hours per week.

29. At the time of his diagnosis, J.S. extremely limited and abnormal/atypical verbal communication, social skills, and restricted repertoire of behavior was known by Defendants to require and to be entitled to receive intensive early intervention programs, comprised of many hours per week of work with specialized skilled trainers using autism specific programs.

30. At the time of his initial certification as eligible for special education services in February 2019, federal and state laws required Defendants to develop a written Individualized Education Plans ("IEPs") for J.S. based on his eligibility to receive services to meet his special education needs as a student with autism.

31. Beginning in February 2019, and continuing during all relevant times, Defendants knew that:

    a. J.S. was an individual with a disability within the meaning of

       Section 504 and the ADA.

   b. J.S. was a student with autism spectrum disorders, including developmental delays and social and emotional impairments.

   c. J.S.'s disability impaired his expressive and receptive language, as well as his cognitive and adaptive skills.

   d. J.S. had neurological impairments, including social and emotional impairments, which substantially limited his major life activities, including learning, functional, and adaptive skills.

   e. J.S. was a student with disability entitled to attend public school and to receive appropriate educational opportunities from a program of special education.

32. On or about February 5, 2019, Defendants were aware that J.S. presented the following impairments due to his diagnosis of Autism:

   a. performance on a cognitive assessment was significantly below the average range for a child his age.

   b. communication development was significantly delayed, showing deficits in his understanding and use of language.

   c. reduced responsiveness to others, as well as limited functional language use.

   d. communication deficits were impacting his ability to interact with adults and peers.

   e. self-help skills fell below the average range and his fine motor skills were significantly delayed.

   f. delays in language, cognitive, adaptive, social/emotional, and fine motor skills were interfering with his participation in age-appropriate activities.

33. Despite having knowledge of J.S.'s impairments, Defendants did not recommend any positive behavior interventions for J.S., nor did Defendants recommend any particular autism specific program or services designed to improve J.S.'s social skills, adaptive development, and cognitive development on his IEP dated February 5, 2019.

34. In February 2019, J.S. was capable of learning, including but not limited to the development of effective speech and communications skills, through autism specific programs which were then available.

35. Defendants knew or should have known that J.S. required in-school autism specific education programs designed to meet J.S.'s individual educational needs.

36. Because Defendants failed to recommend appropriate programs or services for J.S., J.S.'s parents decided to enroll J.S. at NewMeadow, a preschool located in Clifton Park, New York. NewMeadow offered an ABA clinic, designed to meet the educational needs of students with autism, such as J.S. NewMeadon's ABA clinic incorporated ABA into all classrooms and all environments. While attending NewMeadows, during the 2019-2020 and 2020-2021 school years, J.S. received discrete trial teaching through NewMeadows' Bridges Applied Behavior Analysis (ABA) program.

37. Defendants were aware that J.S. was receiving ABA intervention services at NewMeadows and that ABA was highly effective in promoting J.S.'s social communication, learning, adaptive development, and functioning.

38. J.S.'s IEP dated January 21, 2020, noted that the ABA program offered to J.S. at

8

NewMeadow provided him an increased amount of repetition with academic skills in a very systematic, structured environment causing him to make progress on all of his goals. The CPSE concluded that "J.S. benefits from techniques associated with Applied Behavior Analysis and increased processing time."

39. J.S.'s IEP dated April 23, 2020, noted that "J.S. benefits from the use of techniques based on the principles of ABA."

40. J.S.'s IEP dated March 9, 2021, continued to note J.S.'s progress with ABA provided at NewMeadow. The IEP stated "J.S. is quickly progressing with identifying shapes and completing puzzles. He is steadily progressing with his remaining goals." The IEP also noted that J.S. "benefits from the use of techniques of ABA."

41. On March 9, 2021, the CPSE held a transition meeting to review recommendations for J.S., who was starting Kindergarten at Defendants' Malta Avenue Elementary School in September 2021.

42. Despite J.S.'s progress with ABA in preschool, the CPSE and the Committee on Special Education ("CSE") declined the parents' request and did not recommend ABA as part of the program and services offered to J.S. for the 2021-2022 school year. The CPSE and CSE also deferred J.S.'s eligibility to receive 12-month special education services and/or programs.

43. None of the subsequent IEP developed by Defendants for J.S. recommended ABA therapy services to be included as part of any program or services offered J.S. in school, or any autism specific services necessary to enable J.S. to have a meaningful access to education.

44. During the period of September 2021 through the present, J.S. did not achieve his annual goals in study skills, speech/language, social/emotional/behavioral or motor skills, including cognitive, adaptive, and communicative functioning. J.S. also developed behaviors that

9

interfered with learning and functioning.

45. In November 2023, A speech and language evaluation report prepared at the request of Defendants concluded that J.S. "displays significant delays in the areas of expressive and receptive language, functional communication, and vocabulary."

46. An Occupational Therapy Re-Evaluation conducted by Defendants on December 4, 2023, showed that J.S. "is internally distracted and displays difficulty visually focusing on tasks. He requires directions to be repeated multiple times as well as multiple prompts throughout an activity to stay on task.

47. A psychological evaluation conducted at the request of Defendants stated that J.S. "demonstrates more significant expressive/receptive language skills, adaptive living impairments and learning delays" and that J.S.'s autism impacts "his ability to consistently initiate functional communication or complete tasks more independently.  Additionally, [J.S.'s] level of joint attention is also impacted, which makes it difficult from him to sustain engagement.  These developmental skills are the foundation for learning and social engagement."

48. Notwithstanding, J.S.'s impairments affecting his access to a meaningful education, Defendants deliberately and without reasonable justification failed to provide ABA intervention services to J.S. in school.

49. As early as March 2021 and continuing to the present, Plaintiffs have requested that ABA therapy be provided to J.S. in school, but Defendants, through their officers, agents, and representatives have denied Plaintiffs' requests.

50. In addition, Defendants have failed to assign a special education teacher to J.S. during the 2022-2023 and 2023-2024 school years as required by J.S.'s IEPs.

51. In October 2023, Defendants failed to notify the parents that J.S. had been assaulted

in the classroom. Defendants further failed to provide a safe environment for J.S. in school resulting in J.S. being assaulted two other times.

52. Defendants have failed to place J.S. in the least restrictive environment because of his disability in violation of J.S.'s IEP.

53. During the 2023 school year, Defendants failed to follow J.S.'s IEP including work on any of the goals outlined therein. Defendants blamed J.S.'s failure to meet his annual goals on "circumstances within the classroom."

54. From 2019 through the present, and continuing during the 2024-2025 school year, J.S. was, and continues to be, subjected to discrimination, denied meaningful access to education, and denied reasonable accommodations for his educational disabilities.

55. Defendants have excluded J.S. from participation in, denied him the benefits of the services, programs, or activities offered by the Defendants J.S.'s neurotypical peers, and discriminated against J.S. on the basis of his disability by failing to:

   a. Design appropriate educational programs for J.S.

   b. Identify properly J.S.'s educational and related mental health needs.

   c. Provide J.S. with appropriately certified and trained special education teachers and aides, including teachers and aides with a background in teaching student with autism to ensure that J.S.'s special education needs were being met.

   d. Provide service to meet J.S.'s individual language needs as a student with ASD.

   e. Provide J.S. with autism specific services, even though Defendants knew that J.S. needed and was entitled to appropriate educational programs to meet his individual educational needs to accommodate reasonably his educational disabilities and allow him to enjoy meaningful access to education.

11

f.  Consider making ABA services available to J.S. as part of his educational program or services for the 2019-2020, 2020-2021, 2021-2022, 2022-2023, 2023-2024, and continuing during the 2024-2025 school years, despite the fact that Defendants knew that J.S. needed and was entitled to such behavioral treatment approach to accommodate reasonably his educational disabilities and allow him to enjoy meaningful access to education.

g.  Take timely and appropriate measures to prevent J.S. from developing negative attitudes and behaviors that interfered with his abilities to learn.

h.  Design or implement for J.S. educational programs that addressed appropriately the negative attitudes and behaviors that J.S. developed because of Defendants' discrimination and their denial of meaningful access and reasonable accommodation, as aforesaid.

i.  Provide appropriate assistive technology devices and/or services necessary for J.S.'s functional communication.

j.  Provide J.S. with any mental health services, including ABA services.

k.  Have an expert on educating children with autism or autism spectrum disorders attend any of J.S.'s IEP meetings or otherwise provide information or consultation to J.S.'s parents.

l.  Offer parent counseling and training for J.S.'s parents to enable them to perform appropriate follow-up intervention activities at home.

56. Defendants have denied J.S. in-school ABA therapy services for the 2024-2025 school year, despite overwhelming scientific evidence that ABA therapy is effective in promoting cognitive function, language skills, intelligence quotient (IQ), and social abilities in young children

with autism.

57. Defendants failed to provide the above referenced services to J.S., even though Defendants knew that J.S. required and was entitled to such services to have meaningful access to education and reasonable accommodation for his educational disabilities.

## FIRST CAUSE OF ACTION
**(Discrimination under the Title II of the ADA)**

58. Plaintiffs repeat and reallege all the allegations set forth above.

59. Title II of the ADA prohibits a student with a disability from being excluded from participation in or being denied the benefits of the services, programs, or activities of a public entity, or being subjected to discrimination by such entity, by reason of the student's disability. (42 U.S.C. § 12131 et seq.).

60. Plaintiff J.S. is a "qualified individual with a disability" within the meaning of the ADA with respect to services, program and activities of Defendants School District, Board, and County. See 42 U.S.C. §12131.

61. Defendants are public entities within the meaning of the ADA. *See* 42 U.S.C. §12131(1)

62. By the acts and failures of agents and/or employees of Defendants School District, Board, and County, Defendants have failed to provide or attempt to provide J.S. with services, programs and/or activities necessary for J.S. have a meaningful access to education based on J.S.'s known disability, and as a result, Defendants have excluded J.S. from participation in and denied J.S. benefits of the services, programs, or activities offered by the Defendants by reasons of such disability.

63. By the acts and failures of agents and/or employees of Defendants School District, Board, and County, Defendants failed to accommodate J.S.'s known disability without which J.S.

13

was unable to have a meaningful access to education, and as a result, Defendants have excluded J.S. from participation in and denied J.S. benefits of the services, programs, or activities offered by the Defendants by reason of J.S. disability.

64. During the period 2022 though the present and continuing through the 2024-2025 school year, Defendants knowingly, deliberately, and repeatedly failed to provide J.S. with educational programs and related aids and services that were designed to meet his individual education needs as adequately as the needs of non-disabled students of Defendants.

65. Defendants knowingly, deliberately, and repeatedly failed to provide J.S. with educational programs and related aids and services recommended for students with autism to obtain a meaningful access to education.

66. Defendants knowingly, deliberately, and repeatedly failed to provide J.S. with appropriately certified and trained special education teachers and aides, including teachers and aides with a background in teaching students with autism to ensure that J.S.'s special education needs were being met.

67. Defendants' acts and omissions resulting in the exclusion of J.S. from participation in or being denied the benefits of the services, programs, or activities provided by Defendant was because of J.S.'s disability.

68. Defendants, through their conduct, violated Title II of ADA.

69. Defendants acted in bad faith, gross misjudgment, or deliberate indifference to J.S.'s rights to receive educational programs and/or services necessary for him to have a meaningful access to education.

70. As a direct and proximate result of Defendants' violation of the ADA, Defendants caused Plaintiffs Parents and J.S. to suffer the injuries and losses described herein and caused

Plaintiff J.S. to suffer loss of rights guaranteed by the ADA.

71. As a result of Defendants' violations of law, Plaintiffs are entitled to recover damages from Defendants in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**
**(Violation of Section 504 of The Rehabilitation Act of 1973)**

72. Plaintiffs repeat and reallege all the allegations set forth above.

73. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." See 29 U.S.C. § 794.

74. Plaintiff J.S. is a "qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act of 1973 with respect to services, program and activities of Defendants School District, County, and CDS. See 29 U.S.C. §794.

75. Defendants are recipients of federal assistance.

76. By the acts and failures of agents and/or employees of Defendants School District, County, and CDS, Defendants have excluded J.S. from participating in and/or have denied J.S. the benefits of the services, program and/or other activities of Defendants, including but not limited to the programs, services, and activities described herein. Such exclusion and/or denial were solely because of Plaintiff J.S.'s disability and were in violation of Section 504.

77. Defendants School District, County, and CDS failed to accommodate J.S.'s disability by knowingly, deliberately, and repeatedly failing to provide educational programs and appropriately certified and trained professionals with a background in teaching students with autism to ensure that J.S.'s special education needs were met including, but not limited to ABA

15

therapy services, which Defendants knew or should have known to be a necessary part of any education intervention program designed for students with autism.

78. Defendants knowingly, deliberately, and repeatedly ignored scientific evidence and experts' recommendations concerning ABA principles to be included as an important element of any intervention program for young children with autism.

79. As a direct and proximate result of Defendants' conduct, including their refusal to provide ABA intervention, J.S. was unable to make to make any progress with his speech and language development, and to continues to demonstrate significant delays in the adaptive, cognitive, social/emotional speech and language, and motor domains, which interfere with his ability to participate in the services and programs provided by Defendants in a meaningful way based on his disability.

80. Such conduct of Defendants, including the refusal to recommend and provide ABA interventions necessary for the development and improvement of J.S.'s cognitive function, language skills, intelligence quotient (IQ), and social abilities at an early age, amounts to reckless disregard of and gross and deliberate indifference to J.S.'s disability in violation of Section 504.

81. By virtue of the acts and failures of Defendants, Defendants have subjected Plaintiff J.S. to discrimination under programs and activities provided by Defendants, including those described herein. Such discrimination was solely because of Plaintiff J.S.'s disability and in violation of Section 504.

82. Defendants acted in bad faith, gross misjudgment, or deliberate indifference to J.S.'s rights to receive educational programs and/or services necessary for him to have a meaningful access to education.

83. As a direct and proximate result of Defendants' violation of Section 504,

Defendants caused Plaintiffs Parents and J.S. to suffer the injuries and losses described herein and caused Plaintiff J.S. to suffer loss of rights guaranteed by Section 504.

84. As a result of Defendants' violations of law, Plaintiffs are entitled to recover damages from Defendants in an amount to be determined at trial, plus interest, attorneys' fees and costs.

## JURY TRIAL DEMANDED

85. Plaintiffs request a jury trial on all issues raised by the allegations in this Complaint.

**WHEREFORE**, the Plaintiffs requests that this Court:

(1) Issue a declaration stating that Defendants violated Plaintiff J.S.'s rights under Title II of the ADA and Section 504 of the Rehabilitation Act.

(2) Enter judgment in favor of Plaintiffs and against Defendants in an amount of special and general damages to be proven at trial.

(3) Enter an award of attorney's fees and costs incurred in prosecuting this case; and,

(4) Enter an award for such other equitable and further relief as the Court may deem just and proper.

Dated: June 12, 2024
Albany, New York

Respectfully Submitted,

COOPER ERVING & SAVAGE LLP

By: /s/ Carlo A. C. de Oliveira
Carlo A. C. de Oliveira
Bar Roll No.: 516271
Attorneys for Plaintiff
20 Corporate Woods Blvd.
Suite 501
Albany, New York 12211
Telephone: (518) 449-3900
Facsimile: (518) 432-3111
E-mail: Cdeoliveira@coopererving.com